# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LOYAL MANTOOTH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-438-RAW-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Loyal Mantooth requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on May 20, 1961, and was fifty-one years old at the time of the administrative hearing (Tr. 30). He completed the ninth grade, and has worked as an embalmer assistant and funeral attendant (Tr. 19, 218). The claimant alleges he has been unable to work since an amended onset date of December 20, 2011, due to chronic obstructive pulmonary disease (COPD) (Tr. 29, 217).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on October 24, 2011. His application was denied. ALJ Bernard Porter conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated November 20, 2013 (Tr. 11-20). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found the claimant retained the residual functional capacity ("RFC") to perform a range of light work as defined by 20 C.F.R. § 404.1567(b), *i. e.*, he can lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, stand/walk/sit six hours in an eight-hour workday with a required sit/stand option to allow for a change in position at least every thirty minutes. Additionally, the ALJ determined that the claimant could only

occasionally climb stair and ramps, or kneel; never climb ladders or scaffolds or perform any crawling; and frequently balance, stoop, and crouch. Furthermore, the ALJ found that the claimant must avoid work at unprotected heights, around moving mechanical parts, in environments with temperature extremes, and exposure to dust, fumes, gases, and wetness, but ultimately that time off tasks would be accommodated by normal breaks (Tr. 14). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was other work that he could perform, *i. e.*, furniture clerk, small product assembler, or electrical assembler (with the latter two jobs numbers reduced by 50% to account for the sit/stand option) (Tr. 20).

### Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze the medical opinion of his treating physicians, Dr. Arturo Meade and Dr. Ahmer Hussein; and (ii) by failing to properly assess his credibility. The undersigned Magistrate Judge finds that the ALJ did fail to properly analyze the treating physician opinions in the record, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of COPD and chronic lumbar strain/strain (Tr. 13). The medical evidence relevant to this appeal reveals that the claimant received treatment at Sparks Regional Medical Center in Fort Smith, Arkansas, several time for exacerbation of his COPD. On January 10, 2010, a chest x-ray revealed COPD with large pleural bleb versus bulla in the right mid to upper lung field and linear atelectatic changes in the right mid to lower lung field (Tr. 304). On April 17, 2011, a chest x-ray revealed flattening of the diaphragm and hyperaeration,

consistent with COPD, with large blebs/bullae in the right upper hemithorax (Tr. 284). An October 13, 2011 x-ray revealed large right upper lung field blebs/bullae and mild hyperaeration with flattening of the diaphragms consistent with COPD (Tr. 315). On April 4, 2013, the claimant presented to Sparks with complaints of chest pain, and his COPD was characterized as chronic with an emphysema component (Tr. 393). X-rays confirmed that the claimant had bullous disease of the right upper lobe, and that overall, the findings appeared chronic since October 16, 2012 (Tr. 396). A pulse oximetry report from November 5, 2013 suggested that the claimant might qualify for stationary oxygen because arterial oxygen saturation was at or below 88% for at least five minutes (Tr. 421).

Dr. Meade, a pulmonologist, treated the claimant at the Lung Center in Fort Smith. His treatment records reflect continued treatment/follow-up for the claimant's COPD. Spirometry testing from October 14, 2010 revealed expiratory flows of 78% of predicted, which indicated mild obstructive lung disease, and expired volume of 59% predicted may have indicated restrictive lung disease (Tr. 320). Dr. Meade's notes reflect that the claimant's symptoms were aggravated by moderate activity, and relieved by oxygen use, resting, use of beta agonist inhalers, use of long-activing anti-cholinergic inhaler, and use of combined beta-agonist/anti-cholinergic inhalers (Tr. 309). On October 13, 2011, sprirometry testing revealed a severe airway obstruction (Tr. 309, 319). Notes from December 28, 2011 indicate that the claimant's COPD occurred rarely, but that the claimant rated the severity as debilitating (Tr. 331). At the time, Dr. Meade noted that the claimant could not continue fighting fire due to severe COPD and shortness of breath

with even minimal activity (Tr. 331). On June 12, 2012, Dr. Meade prepared a letter in which he stated that due to the claimant's moderate obstructive lung disease he would need a sedentary job that does not require him to be on his feet more than two hours out of an eight-hour day, or lift/carry more than ten pounds (Tr. 360).

Dr. Hussain's progress notes reflect the claimant's continued reports of lung problems since 2009, as well as low back pain (Tr. 342-347, 369-388). Specifically, Dr. Hussain treated the claimant in February 2012 and April 2012 for complaints of lung problems (Tr. 342-343). Spirometry testing on May 17, 2012 revealed numerous findings of below the lower limits of normal or significant post change (Tr. 348-351). On September 24, 2012, Dr. Hussain completed a Medical Source Opinion of the claimant's RFC, in which he indicated that the claimant could stand/walk two to three hours in an eight-hour workday, and lift/carry fifteen pounds (Tr. 362). In support, Dr. Hussain referred to the claimant's chronic COPD on extensive apical bullous emphysema and subplural cysts as support for stating that the claimant would have a chronic cough, chest pain, and shortness of breath (Tr. 362). On September 6, 2013, he again completed a Medical Source Opinion, indicated that the claimant could stand/walk less than two hours in an eight-hour workday, lift/carry fifteen pounds; that his ashthma was triggered by dusts, gases or fumes, pollen, smoke, strong odors or sprays, chemicals, and high humidity; and that he needed a nebulizer three times a day for twenty minutes at a time (Tr. 367). He noted that the claimant's diagnoses were COPD and chronic low back pain (Tr. 367).

On March 6, 2012, Dr. Ronald Schatzman conducted a consultative examination of the claimant, in which he noted the claimant's lung fields were clear with auscultation and there were no rales, rhonchi, or wheezes, but that the lumbar-sacral spine was tender with painful decreased range of motion and muscle spasms (Tr. 336, 338, 341). He assessed the claimant with chronic back pain and asthma (Tr. 337). Two days prior to this exam, Dr. Hussain's treatment notes indicate that the claimant had left rib pain with palpation, cough, and lungs with diminished sounds to left lower lobe, with right lobe clear (Tr. 377).

State reviewing physician Dr. J Marks-Snelling, D.O., completed a Physical Residual Functional Capacity Assessment on November 28, 2011, in which he found that the claimant could perform the full range of medium work but needed to avoid all exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 323-329). On June 4, 2012, Dr. Kenneth Wainner reviewed the medical records and determined that the claimant could perform medium work but needed to avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 353-356). Dr. Schatzman's opinion and both reviewing opinions pre-date the Medical Source Opinions provided by the claimant's treating providers.

Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinion is not entitled to

controlling weight, the ALJ must determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. §§ 404.1527 and 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ 404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored the evidence in the record as to the claimant's continued treatment for asthma

and back pain. In his written opinion, the ALJ gave the opinions of Dr. Hussain and Dr. Meade "little weight" because: (i) the claimant's symptoms were relieved during oxygen use in the emergency room, (ii) the claimant had an unremarkable cardiac workup, (iii) he only received narcotic pain relievers for his back pain, and (iv) their findings did not agree with Dr. Shatzman's one-time finding that the claimant had normal findings except for limited range of motion and muscle spasms (Tr. 18). He then stated that he incorporated some postural restrictions, as well as a sit/stand option and environmental avoidances because they were supported by the record. Furthermore, the ALJ made no mention of the applicable factors in relationship to Dr. Hussain and Dr. Meade, and specifically ignored Dr. Meade's specialty of pulmonology.

Additionally, although an ALJ is not required to give controlling weight to an opinion that the claimant could not return to work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), he *is required* to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 404.1527, specifically in relation to functional limitations. Instead, the ALJ ignored the evidence in the record specifically stating that the claimant's COPD had worsened since the alleged onset date, was considered chronic effective October 2012, and that its severity was reflected by the fact the claimant likely qualified for stationary oxygen. *See Langley,* 373 F.3d at 1119. *See also Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002); Soc. Sec. Rul. 96-5p, 1996 WL

374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). This error is also problematic because it indicates that the ALJ did not conduct a proper longitudinal assessment of the claimant's impairments under 20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation."). The ALJ thus improperly evaluated the treating physician opinions that the claimant was limited to sedentary work. Indeed, it seems that the ALJ took great pains to find that the claimant could perform the standing/walking levels of light work, in an effort to avoid finding him disabled as required by Medical-Vocational Rule 201.10 if he could only perform sedentary work. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F2d 382, 385-386 (7th Cir. 1984).

Because the ALJ refused to discuss probative evidence inconsistent with his RFC determination, the undersigned Magistrate Judge finds he did not properly consider it. Consequently, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's RFC. If on remand there is any adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**